**HONEYWELL INTERNATIONAL INC. and Honeywell Intellectual Properties Inc., Plaintiffs.**

v.

**UNIVERSAL AVIONICS SYSTEMS CORP. and Sandel Avionics, Inc., Defendants.**

No. C.A.03–242–MPT.

United States District Court, D. Delaware.

Nov. 30, 2004.

Thomas C. Grimm, Esquire and Julia Heaney, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Of Counsel: Steven D. McCormick, Esquire, Kirkland & Ellis LLP, Chicago, IL, Sarah Slover, Esquire, Mayer, Brown, Rowe & Maw LLP, New York City, for Plaintiffs Honeywell International Inc. and Honeywell Intellectual Properties Inc.

Frederick L. Cottrell, III, Esquire, Richards, Layton & Finger, P.A., Wilmington, DE, Of Counsel: William G. Todd, Esquire, Scott J. Bornstein, Esquire, Elizabeth S. Tse, Esquire, and Jennifer H. Burdman, Esquire, Greenberg Traurig, LLP, New York City, Brian A. Weinberger, Esquire, Greenberg Traurig, LLP, Phoenix, AZ, for Defendant Universal Avionics Systems Corp.

Thomas L. Halkowski, Esquire, Fish & Richardson P.C., Wilmington, DE, Of Counsel: Frank E. Scherkenbach, Esquire, Fish & Richardson P.C., Boston, MA, Howard G. Pollack, Esquire, John V. Picone III, Esquire, and Michael R. Headley, Esquire, Fish & Richardson, P.C., Redwood City, CA, for Defendant Sandel Avionics, Inc.

### MEMORANDUM ORDER

THYNGE, United States Magistrate Judge.

This is a patent infringement case. Pending before the court are two motions *in limine* submitted by plaintiffs Honeywell International, Inc. and Honeywell Intellectual Properties Inc. (collectively "Honeywell") and Sandel Avionics, Inc. ("Sandel") pursuant to this court's oral order made during a November 19, 2004 pre-trial conference.[1] The parties' com-

---

1. D.I. 134 (Honeywell's Motion *In Limine* to   Strike Sandel's Objections to "Design Re-

peting motions concern the admissibility at trial of a Sandel document entitled "Design Requirements and Objectives for the ST 3400 TAWS/RMI" (the "DRO").

Sandel argues, pursuant to Federal Rules of Evidence 402 and 403, that its Design Requirements and Objectives for the ST 3400 TAWS/RMI (the "DRO") should be excluded as irrelevant and prejudicial. Sandel asserts that the DRO is not relevant evidence because that document purportedly does not accurately describe the accused functions of Sandel's Terrain Awareness System ("TAWS"). Sandel asserts that because "[t]he source code is the true record ... [and because] [t]he DRO is a lot easier for the jury to understand ... [compared to the] C programming language of the source code," introducing the DRO into evidence creates "the danger of unfair prejudice substantially outweigh[ing] any minimal probative value."[2]

Sandel contends that "the actual software which implements the accused functions operates differently in critical respects [and that the DRO] is not a description of how Sandel's TAWS actually functions."[3] Sandel's CEO, Gerald J. Block asserts that "[t]he DRO ... [does not] precisely reflect[] the exact final design of Sandel's TAWS. Sandel's source code is the only document that completely and accurately reflects the final implementation."[4] Sandel notes both Block and Leslie R. Corn (a Sandel Rule 30(b)(6) witness) testified that the source code, not the DRO, is the true record of the implementation of Sandel's TAWS.[5] Sandel also points to two instances where the DRO and the actual implementation of its TAWS are inconsistent. First, that while the DRO describes the use of two algorithms with respect to the PDA function of its TAWS system, the implementation of that function in the TAWS code uses only one algorithm.[6] Second, that "the DRO contains an inaccurate description of the outer boundary for PDA alerts: the DRO says the limit is 16 nautical miles but the code reflects a 15 nautical mile calculation."[7]

Honeywell points out that not only did Sandel's technical expert, Robert L. Gibson, testify that the DRO describes Sandel's TAWS[8] but that Gibson "supports his own description of Sandel's PDA and VAP system" with four citations to the DRO.[9] Honeywell also notes that, after the present suit was filed, Sandel received a non-infringement letter from its patent counsel

---

quirements and Objectives for the ST 3400 TAWS/RMI"); D.I. 136 (Sandel's Motion *In Limine* to Exclude Sandel's "DRO").

2. D.I. 136 at 4.

3. D.I. 136 at 1.

4. D.I. 137 at 2 ¶ 5 (Declaration of Gerald J. Block).

5. *See* D.I. 136 at 2–3.

6. D.I. 136 at 3 n. 1.

7. D.I. 136 at 3 n. 1. The court notes that Sandel also pointed out these same two inconsistencies at oral argument on claim construction and its motion for summary judg-

ment of non-infringement. *See* D.I. 127 at 123–24.

8. *See* D.I. 134, Ex C at 60 ("Q. [The DRO is] one of the documents that you reviewed and relied on in connection with your analysis of Sandel's infringement of the '436 patent? A. That's correct. Q. And the design requirements and objectives describes the Sandel's TAWS, correct? ... A. That's correct." (Transcript of July 13, 2004 deposition of Robert L. Gibson)).

9. *See* D.I. 134 at 1 (citing Expert Rebuttal Report of Robert L. Gibson Regarding Non–Infringement at ¶ 16 (quoting DRO at 31), ¶ 26 (quoting DRO at 25), ¶ 27 (quoting DRO at 31), and ¶ 36 (citing DRO at 30–31)).

which states that "[o]ur understanding of the Sandel ST34000 TAWS is based primarily on a document entitled 'Design Requirements and Objectives for ST3400 Terrain Awareness and Warning System (TAWS).'"[10] Honeywell contends that the only instance identified in Sandel's non-infringement letter concerning a function described in the DRO that is not actually implemented concerns "VAP Baseleg Processing," upon which neither Honeywell nor Sandel apparently relies.[11]

Also, as the court noted in its opinion construing disputed claim terms and ruling on Sandel's motion for summary judgment of non-infringement, it was Sandel, not Honeywell, that originally introduced the DRO in this case and that Sandel acknowledged that at least parts of the DRO do accurately reflect the implementation of Sandel's TAWS.[12] Finally, Sandel conceded in its summary judgment briefing that the DRO is *not* contradictory to one of Honeywell's main arguments based on the DRO. Sandel asserted that:

> Honeywell makes much of the statement [in the DRO] that the "VAP capability shall enable VAP processing when" certain parameters are met. *But that passage does not contradict the source code* as explained by the sworn testimony of Les Corn and Robert Gobson. This evidence establishes beyond dispute that the VAP processing *is, in fact, already "enabled"* by the time the aircraft gets within the range addressed by the first suppressing criteria.[13]

In light of the reliance by Sandel's expert on the DRO in his rebuttal report, the reliance of Sandel itself in bringing its motion for summary judgment of non-infringement, and Sandel's affirmative statement that the DRO does accurately describe certain aspects of the implementation of Sandel's TAWS (particularly that the DRO does not contradict the actual source code with respect to one of the very portions of that document upon which Honeywell will likely rely), the court determines that the DRO is relevant evidence and that document may be admitted at trial. The court also determines that the DRO will not be unduly prejudicial if admitted into evidence. If the actual source code does clearly contradict Honeywell's arguments for infringement, as Sandel argues, the court is confident that Sandel will be able to demonstrate those contradictions to the finder of fact at trial.

For the reasons stated above,

IT IS ORDERED THAT:

Honeywell's Motion *In Limine* to Strike Sandel's Objections to "Design Requirements and Objectives for the ST 3400 TAWS/RMI" (D.I.134) is **GRANTED**.

Sandel's Motion *In Limine* to Exclude Sandel's "DRO" (D.I.136) is **DENIED**.

---

10. D.I. 134, Ex. D at 1. Honeywell represents to the court that Sandel relies on this letter in defense against willful infringement and that the letter is an agreed upon joint trial exhibit. *See* D.I. 134 at 2.

11. *See* D.I. 134 at 2 (citing D.I. 134, Ex. D at 27, n. 29 ("Our understanding is that the ability to suppress FLTA and Premature Descent Alert (PDA) alerts while in VAP Base Leg Processing is provided for by the ST3400 TAWS Design Requirements and Objectives, but not yet implemented in the actual product, which only suppresses GPWS Mode 2 alerts.")).

12. D.I. 129 at 50 n. 174.

13. D.I. 106 at 9 (first emphasis added).